IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CARL KELLY, | No. 2:23-CV-2581-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| GAVIN NEWSOM, et al., | |
| Defendants. | |

   Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply,

1

concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff James Carl Kelly ("Plaintiff") is a current inmate at California Health Care Facility, Stockton, California ("CHCF"). Plaintiff names the following Defendants: (1) Gavin Newsom, California State Governor, ("Defendant Newsom"); (2) unnamed individual serving as CHCF Warden ("Defendant Warden"); (3) Akintola Omoniyi, PA at CHCF ("Defendant Omoniyi"); (4) Izzo Joseph, MD at CHCF ("Defendant Joseph"); (5) Katz David Allen, MD at CHCF ("Defendant Allen"); and (6) Nurse Gaoat Princess, medical care provider at CHCF ("Defendant Princess"). See ECF No. 1, at 3. Plaintiff asserts the following claims against Defendants: (1) denial of access to the courts, in violation of the First Amendment; (2) retaliation in violation of the First Amendment; (3) Eighth Amendment deliberate indifference to Plaintiff's injuries; (4) Eighth Amendment unsafe conditions; and (5) Fourteenth Amendment violation of due process.

Plaintiff asserts that on May 24, 2003, Plaintiff suffered sexual abuse while in custody of the California Department of Corrections and Rehabilitation ("CDCR"). See id. at 3. Plaintiff states he was unconscious at the time of the sexual abuse, but suffered injuries to his lower back, left buttock, and left heel. See id. Most relevant to this action, in the following years, Plaintiff had seen several medical care providers at CHCF, and had subsequently filed a separate lawsuit regarding his treatment. See id. at 4. Plaintiff alleges he received medical treatment for his chronic back pain, but most recently has not received attention for this pain. See id. On May 16, 2023, Plaintiff states he fell two times in the presence of CHCF medical care

providers but has not had his treatment plans altered or adjusted. See id. The only instance Plaintiff was examined by additional physicians was at San Joaquin Hospital. See id. During this time, Plaintiff alleges Defendant Joseph, Defendant Allen, and Defendant Omoniyi denied any indications of a new medical diagnosis. See id.

Plaintiff also alleges he has been prevented from access to his personal property and access to the library facilities since his previous lawsuit. See id. at 5.

Beyond these facts, Plaintiff has not included specific allegations as to each specific defendant.

## II.  DISCUSSION

Plaintiff's complaint is deficient for two main reasons. First, Plaintiff has failed to link each claim to specific Defendants. Second, when specific claims are alleged, Plaintiff's complaint fails to include the necessary factual allegations to establish a cognizable claim. Each deficiency is explained below.

### A.  Causal Link

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

///

///

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Here, Plaintiff's factual allegations make little to no reference to any of the named Defendants. While Plaintiff vaguely and briefly mentions Defendant Omoniyi, Defendant Joseph, and Defendant Allen, Plaintiff's complaint must include facts showing the specific actions of each named defendant in connection to a constitutional violation. See ECF No. 1, at 4. Additionally, Defendant Newsom's role as California Governor and unnamed defendant's role as Warden of CHCF are supervisory personnel. As to these individuals, Plaintiff has not alleged facts showing either their personal involvement in the alleged violations or implementation of a policy which was the moving force behind a constitutional violation. Plaintiff will be provided an opportunity to amend consistent with the standards outlined above.

/ / /

/ / /

/ / /

**B.** **Substantive Claims**

1. Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate which is more than minimal; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

In this case, Plaintiff's complaint fails to allege any facts to show retaliation. Specifically, it is unclear which defendants Plaintiff is asserting retaliated against him. Additionally, Plaintiff's complaint lacks the necessary allegations to establish Plaintiff exercised a constitutional right and that, because of exercising this right, Plaintiff suffered adverse action which was more than minimal. Again, Plaintiff will be given an opportunity to amend.

2. Access to the Courts

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Jones v. Williams, 791 F.3d 1023, 1035 (9th Cir. 2015); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Prison officials must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the

5

law." Bounds, 430 U.S. at 828; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) (overruled on other grounds as stated by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). But the right does not require a particular methodology. See Lewis, 518 U.S. at 356. It guarantees the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Id. It does not promise to turn inmates into effective litigators. See id. at 354-55; Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009). The right of access secures the ability to present non-frivolous claims to the court, it does not secure a right to discover claims or litigate them effectively once filed. See Lewis, 518 U.S. at 354-55; Phillips, 477 F.3d at 655. The tools required are those that inmates need to attack their sentences or challenge conditions of confinement. See Lewis, 518 U.S. at 355; Phillips, 477 F.3d at 655. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355; see Phillips, 477 F.3d at 655. The right is restricted to non-frivolous criminal appeals, civil rights actions under 42 U.S.C. § 1983, and habeas corpus petitions. Lewis, 518 U.S. at 353 n.3, 354-56.

The United States Supreme Court has identified two categories of access-to-court claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002). The first category includes "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability to prepare and file a suit. Id. at 413. The second category, "backward-looking" claims, allege that due to official action, a specific case "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." Id. at 413-14. These cases look "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." Id. at 414.

To establish an access to the court violation, a prisoner must identify an actual injury. Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2 (E.D. Cal. Apr. 17, 2020). An actual injury is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2. An actual injury is a jurisdictional

requirement and may not be waived. See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL 1904818, at *2. And in the backward-looking context more specifically, a plaintiff must identify: (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is] not otherwise available in some suit that may yet be brought." Harbury, 536 U.S. at 414-18; Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL 714300, at *6 (E.D. Cal. Feb. 22, 2017).

Here, Plaintiff's complaint lacks factual allegations necessary to state a cognizable claim of denial of access to the courts. While Plaintiff's complaint briefly mentions Plaintiff has been prevented from access to his personal property and library facilities, the complaint fails to include any other factual allegations. More specifically, Plaintiff has failed to allege any actual injury. Once again, Plaintiff will be provided an opportunity to amend and include the necessary factual allegations.

### 3. Due Process

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Due process protects against the deprivation of property where there is a legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected property interests are created, and their dimensions are defined, by existing rules that stem from an independent source – such as state law – and which secure certain benefits and support claims of entitlement to those benefits. See id.

Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to

1  impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405.  Applying this standard, the

2  Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time

3  credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner,

4  515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308,

5  323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in

6  remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

7         With respect to prison disciplinary proceedings, due process requires prison

8  officials to provide the inmate with: (1) a written statement at least 24 hours before the

9  disciplinary hearing that includes the charges, a description of the evidence against the inmate,

10 and an explanation for the disciplinary action taken; (2) an opportunity to present documentary

11 evidence and call witnesses, unless calling witnesses would interfere with institutional security;

12 and (3) legal assistance where the charges are complex or the inmate is illiterate.  See Wolff, 418

13 U.S. at 563-70.  Due process is satisfied where these minimum requirements have been met, see

14 Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the

15 record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill,

16 472 U.S. 445, 455 (1985).  The "some evidence" standard is not particularly stringent and is

17 satisfied where "there is any evidence in the record that could support the conclusion reached."

18 Id. at 455-56.  However, a due process claim challenging the loss of good-time credits as a result

19 of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by

20 way of habeas corpus.  See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

21        Here, Plaintiff's complaint lacks any factual allegations suggesting or referencing

22 a due process violation as the result of a Defendant's actions or a prison disciplinary proceeding.

23 Therefore, Plaintiff must include factual allegations referencing which defendants this claim is

24 asserted against and how their conduct resulted in a due process violation.  As stated above, there

25 are several means to assert a due process violation, but each must be alleged with particularity.

26 Therefore, Plaintiff will be given an opportunity to amend consistent with the standards above.

27 / / /

28 / / /

    4.  <u>Medical Care</u>

    The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See <u>Farmer</u>, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See <u>id.</u>

    Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See <u>Estelle</u>, 429 U.S. at 105; see also <u>Farmer</u>, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992); see also <u>Doty v. County of Lassen</u>, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See <u>Lopez v. Smith</u>, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

/ / /

/ / /

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In this case, it appears that Plaintiff asserts Eighth Amendment medical care claims against Defendant Joseph, Defendant Allen, and Defendant Omoniyi.  Plaintiff asserts Defendant Joseph, Defendant Allen, and Defendant Omoniyi chose not to alter Plaintiff's medical diagnosis.  See ECF No. 1, at 4.  While these facts suggest a difference of medical opinion, the Court will permit Plaintiff leave to amend to clarify his Eighth Amendment allegations.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended

1   complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if
2   Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make
3   Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be
4   complete in itself without reference to any prior pleading.  See id.

5         If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the
6   conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See
7   Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how
8   each named defendant is involved, and must set forth some affirmative link or connection
9   between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d
10  164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

11        Finally, Plaintiff is warned that failure to file an amended complaint within the
12  time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at
13  1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply
14  with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b).
15  See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

16        Accordingly, IT IS HEREBY ORDERED as follows:

17      1.    Plaintiff's original complaint is dismissed with leave to amend.

18      2.    Plaintiff shall file a first amended complaint within 30 days of the date of
19  service of this order.

21  Dated: May 13, 2024

                              _____
                              DENNIS M. COTA
                              UNITED STATES MAGISTRATE JUDGE